**OLD TOWN CANOE COMPANY,**
**Plaintiff,**

v.

**GLENWA, INC., Defendant.**

**No. CIV.00–1675–HA.**

United States District Court,
D. Oregon.

Nov. 4, 2002.

Mark J. Lee, Langabeer, Tull & Lee, P.S., Bellingham, WA, Russell J. Barron, Foley & Lardner, Milwaukee, WI, William L. Richardson, Harrang, Long, Gary, Rudnick, P.C., Salem, OR, for Plaintiff Dennis G. Martin.

George W. Hoover, Willmore F. Holbrow, III, Blakely, Sokoloff, Taylor, & Zafman, Los Angeles, CA, Donna Jo Coningsby, Blakely Sokoloff Taylor & Zafman, Lake Oswego, OR, for Defendant.

## OPINION AND ORDER

HAGGERTY, District Judge.

Plaintiff alleges patent infringement against defendant, and both parties seek an order from this court granting summary judgment. In their briefings in support of their respective motions, the parties offer proposed definitions of the meaning and scope of the claims and material terms in plaintiff's patents, underscoring the need for this court to resolve these issues as a matter of law. A hearing pursuant to this duty was conducted in

court on September 26, 2001. This Opinion and Order provides the court's construction of the patents' claims and scope, as well as the court's ruling that, pursuant to this construction, plaintiff is entitled to summary judgment.

## I. BACKGROUND

This case is brought by plaintiff Old Town Canoe Company, a Delaware corporation that manufactures and distributes "sit-on-top" kayaks through one of its divisions, Washington-based "Ocean Kayak." Plaintiff distributes and sells its kayaks throughout Oregon, and alleges that defendant Glenwa, a California corporation, is manufacturing and selling self-propelled watercraft with the brand name of "Cobra" in Oregon that infringes certain utility patents issued by the United States Patent and Trademark Office. These utility patents were issued to Tim Niemier, the previous owner of Ocean Kayak, following the 1997 issuance of a design patent for "Malibu Two," a kayak Niemier designed with multiple seating areas and overlapping foot wells. The three subsequent utility patents at issue are referred to as the '177 patent (U.S. Patent No. 5,964,177, issued October 12, 1999); the '063 patent (U.S. Patent No. 6,152,063, issued November 28, 2000); and the '912 B1 patent (U.S. Patent No. 6.178,912 B1, issued on January 30, 2001). Ocean Kayak assigned its rights under these patents to Old Town.

Plaintiff asserts that defendant is infringing various claims in each of the three patents through defendant's sales of its "Cobra Tandem," a two-seat kayak designed in 1996; the "Cobra Triple," a three-seat kayak introduced in 2000; and the "Cobra Fish N' Dive," introduced in 1997. A second version of the Tandem was designed after this lawsuit, and this "Tandem Redesign" also is accused. Plaintiff asserts that the design, features and particulars of these kayaks infringe the claims and protections granted to plaintiff for multiple seating areas and overlapping footwells.

Defendant moves for summary judgment on grounds that (1) the three utility patents are invalid under the affirmative defenses of anticipation and obviousness; or (2) even if valid, the patents are not infringed by defendant's products. Plaintiff has filed a cross-motion for summary judgment, arguing that the patents are valid and that defendant infringes upon various claims of the patent.

Exercising federal jurisdiction in this action is proper because the case is a "civil action arising under [an] Act of Congress relating to patents." 28 U.S.C. § 1338(a).

## II. POSITIONS OF THE PARTIES

Defendant argues that after this lawsuit was initiated, it discovered a piece of prior art that has existed since at least the 1980's. Known as a "waveski," the device is a watercraft that combines elements of a kayak and a surf board. The inventor of plaintiff's sit-on-top kayaks, Tim Niemier, is familiar with waveskis, has owned at least two, and acknowledged initially in deposition that "a waveski is a sit-on-top kayak...." [1] In the mid–1980's, an Australian waveski manufacturer named "Raider" was selling a tandem waveski called the "Raider Double" in Australia and the United States. Defendant's reliance upon the Raider Double as prior art to establish that plaintiff's patents are invalid depends

1. Plaintiff's counsel insists that the relevant deposition passage, taken in its entirety, discloses that Niemier meant to acknowledge that some people think that the two craft are the same, but that he thinks "there's another name" that can be used, and that waveskis are distinct from what he invented and marketed. This court's reading of the passage in question is inconclusive.

upon the court's acceptance of defendant's version of claim construction.

Plaintiff seeks a construction that recognizes that a sit-on-top kayak has a displacement hull, generally V-shaped, that cuts through the surface of water. Plaintiff distinguishes its patented sit-on-top kayaks from the Raider Double and other "surf kayaks," which plane, or ride, on top of the water.

## III. ANALYSIS OF CLAIM CONSTRUCTION DUTIES

A patent is a fully integrated document, and must set out a written description of the invention "in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains" to practice the invention. 35 U.S.C. § 112. "It has long been understood that a patent must describe the exact scope of an invention and its manufacture to secure to [the patentee] all to which he [or she] is entitled, [and] to apprise the public of what is still open to them." *Markman et al. v. Westview Instruments, Inc., et. al.,* 517 U.S. 370, 373, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), *aff'g,* 52 F.3d 967 (Fed.Cir. 1995).

A patent infringement analysis is a two-step process. *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1454 (Fed.Cir.1998) (*en banc*); *CVI/Beta Ventures, Inc. v. Tura LP,* 112 F.3d 1146, 1152 (Fed.Cir. 1997), *cert. denied,* 522 U.S. 1109, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998); *Cole v. Kimberly–Clark Corp.,* 102 F.3d 524, 528 (Fed. Cir.1996), *cert. denied,* 522 U.S. 812, 118 S.Ct. 56, 139 L.Ed.2d 20 (1997). First, the meaning and scope of the patent claims asserted to be infringed must be determined. This step is commonly referred to as "claim construction" or "claim interpretation." *Markman,* 517 U.S. at 391, 116 S.Ct. 1384 (the construction of scope and meaning of the patent is a question of law for the court to decide, although the ulti-

mate question of infringement may remain for the jury).

Second, the properly construed claims must be compared to the device or method that is accused of infringing. *See Cybor Corp.,* 138 F.3d at 1454.

■ The interpretation and construction of a patent claim are "exclusively within the province of the court." *Markman,* 517 U.S. at 391, 116 S.Ct. 1384. A court therefore has "the power and obligation to construe as a matter of law the meaning of language used in the patent claim." *Markman,* 52 F.3d at 979; *see also Exxon Chem. Patents, Inc. v. Lubrizol Corp.,* 64 F.3d 1553, 1556 (Fed.Cir.1995), *cert. denied,* 518 U.S. 1020, 116 S.Ct. 2554, 135 L.Ed.2d 1073 (1996).

Accordingly, under *Markman,* courts are instructed to conduct a hearing to construe disputed claims. *See Cleanox Envtl. Services, Inc. v. Hudson Envtl. Services, Inc.,* 14 F.Supp.2d 601, 604–05 (D.N.J.), *aff'd in relevant part, Mantech Envtl. Corp. v. Hudson Envtl. Svcs., Inc.,* 152 F.3d 1368 (Fed.Cir.1998) (a *Markman* hearing is held to construe disputed claims). A summary judgment motion may create the appropriate setting in which to conduct a *Markman* hearing. *See MacNeill Engineering Co., Inc. v. Trisport, Ltd.,* 126 F.Supp.2d 51, 53 (D.Mass.2001), citing *MediaCom Corp. v. Rates Tech., Inc.,* 4 F.Supp.2d 17, 22–23 (D.Mass.1998) (claim construction is frequently handled in conjunction with a hearing on a motion for summary judgment). However, at least one court has recognized that "when the *Markman* hearing is conducted at the summary judgment stage, it is ... important to conduct the two hearings independently of each other—the *Markman* hearing being held prior to and entirely independently of the summary judgment hearing." *Amgen, Inc. v. Hoechst Marion Roussel, Inc.,* 126

F.Supp.2d 69, 79 (D.Mass.2001) (but also acknowledging that "other courts have chosen to address the issues raised with respect to claim construction in the context of the motion for summary judgment and hence conduct the *Markman* hearing in conjunction with the hearings on summary judgment," citing *Biogen v. Berlex Labs., Inc.*, 113 F.Supp.2d 77, 81 (D.Mass.2000)).

In this case, the court set a hearing date after the parties' summary judgment motions were fully briefed. While this hearing was not identified initially as a *Markman* hearing, the bulk of the briefing from counsel, as well as most of the argument presented at the hearing, focused upon issues of construction, and this court is compelled to resolve these issues before analyzing the parties' dispositive motions.

### 1. Standards for Construction

In making a determination of the meaning and scope of the claims at issue, the court may consult various sources, including those that are intrinsic and extrinsic to the patent claims. There is a hierarchy of evidence to be considered, and emphasis is given first to the words of the claims, then to the specification of the patent, then to the prosecution history of the patent, if in evidence, and finally to extrinsic evidence. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir.1996). Expert testimony upon this question is both permissible and appropriate if the court finds it to be of assistance in reaching its determination of the meaning of the language of the patent. *Cybor Corp.*, 138 F.3d at 1454; *CVI/Beta Ventures*, 112 F.3d at 1152; *Vitronics*, 90 F.3d at 1582–83; *Lubrizol*, 64 F.3d at 1556; *Markman*, 52 F.3d at 979–80.

The court is entitled to derive constructions from the plain language of the patent itself and give the claim its ordinary meaning, without unnecessary reliance upon extrinsic evidence. The Federal Circuit stated in *Markman* that:

> [T]he focus in construing disputed terms in claim language is not the subjective intent of the parties to the patent contract when they used a particular term. Rather the focus is on the objective test of what one of ordinary skill in the art at the time of the invention would have understood the term to mean.

*Markman*, 52 F.3d at 986.

### 2. The Construction of Relevant Terms

#### *"Sit-on-top kayak"*:

The terms "sit-on-top kayak" appears in the "preamble" to each of the claims at issue, and plaintiff argues the phrase should be construed as a limitation. A patent claim typically has three parts: 1) the preamble; 2) the transition; and 3) the body. 2 Donald S. Chisum, Patents § 806[1][b] (1994). The preamble is "an introductory phrase that may summarize the invention, its relation to the prior art, or its intended use or properties." *Id.* It may also constitute a limitation on a claim. *Id.* "If the preamble adds no limitations to those in the body of the claim, the preamble is not itself a claim limitation and is irrelevant to proper construction of the claim." *IMS Technology, Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1434 (Fed.Cir.2000), citing *Pitney Bowes, Inc. v. Hewlett–Packard Co.*, 182 F.3d 1298, 1305 (Fed.Cir.1999). The "preamble of a claim does not limit the scope of the claim when it merely states a purpose or intended use of the invention." *In re Paulsen*, 30 F.3d 1475, 1479 (Fed.Cir.1994). "[I]f a claim preamble is 'necessary to give life, meaning, and vitality' to the claim, then the claim preamble should be construed as if in the balance of the claim." *Pitney Bowes, Inc.*, 182 F.3d at 1305 (quoting *Kropa v. Robie*, 38 C.C.P.A. 858, 187 F.2d 150, 152 (1951)); see also *Gerber Garment*

*Technology, Inc. v. Lectra Systems Inc.,* 916 F.2d 683, 688 (Fed.Cir.1990) (terms appearing in a preamble may be deemed limitations of a claim when they give meaning to the claim and properly define the invention). The issue of "whether a preamble constitutes a claim limitation must be determined on the facts of each case in light of the claimed invention as a whole." *In re Stencel,* 828 F.2d 751, 754 (Fed.Cir.1987). The effect that should be accorded to the words contained in a preamble "can be resolved only on review of the entirety of the patent to gain an understanding of what the inventors actually invented and intended to encompass by the claim." *Corning Glass Works v. Sumitomo Electric, Inc.,* 868 F.2d 1251, 1257 (Fed.Cir.1989).

■ Accordingly, a claim preamble recites claim limitations only if "the claim cannot be read independently of the preamble and the preamble must be read to give meaning to the claim or is essential to point out the invention." *Marston v. J.C. Penney Co.,* 353 F.2d 976, 986 (4th Cir.1965), *cert. denied,* 385 U.S. 974, 87 S.Ct. 515, 17 L.Ed.2d 437 (1966) (citing *Kropa* ).

■ This court concludes that the preamble provides essential meaning to the claims that follow, and that the patents intended to, and must, include "sit-on-top kayak" as a structural limitation. The preamble includes repeated references to "sit-on-top kayak," such as: "Conventional kayaks comprise a hollow shell... * * * [A] new type of kayak is referred to... as a sit-on-top kayak [where] the user... sits in an open cockpit on the top of the kayak hull. The sit-on-top kayak is somewhat similar to a surfboard in overall shape, but normally has a generally V-shaped hull portion and a deeper draft to allow better tracking. * * * The need ... exists for a sit-on-top kayak design that provides three seating surfaces and footwells associated therewith, but does not result in a boat that is inconveniently long." Background of the Invention, Col. 1 of Patent '177. The use of the term "sit-on-top kayak" goes beyond merely describing certain advantages of the invention, and "breathes life" into the claims that follow. Accordingly, the term sit-on-top kayak amounts to a limitation and, therefore, must be construed by the court.

■ Plaintiff proposes construing "sit-on-top kayak" as a "human-propelled, water displacement vessel used as a conveyance for carrying people and cargo on flat water surfaces for long periods of time, and has a keel, hull, prow, and chines [ridges on the hull to stabilize and channel water]." Defendant argues that the extrinsic evidence, including plaintiff's catalogues and Internet website, suggests a much broader scope for "sit-on-top kayak" vessels (including surfing), with portrayals of several sit-on-top kayaks that have no keel and/or a flat-bottomed hull.

Since the preamble uses plain language to describe a sit-on-top kayak as "somewhat similar to a surfboard in overall shape," but normally having "a generally V-shaped hull portion and a deeper draft to allow better tracking," this court relies upon the terms' ordinary meaning, as well as the insights provided by the patents' specifications, in construing "sit-on-top kayak" as a small decked watercraft propelled by a human or by humans using a double-ended paddle or paddles, narrow in shape, with a generally V-shaped hull portion and a deeper draft than a surfboard to allow better tracking, on top of which the passenger or passengers sit horizontally aligned.

The court relies upon the plain meanings of the terms and presented in the patents to construe the following additional terms:

**"Hull":**

 The bottom portion of a sit-on-top kayak, with a bow and stern, generally V-shaped to create a deeper draft than a surfboard to obtain better tracking.

**"Cockpit":**

 The depression toward the center of the watercraft in or on which the paddler or paddlers sit.

**"Deck":**

 The top of a kayak.

**"Footwell":**

 Within the patents, the term comprises a "plurality of upwardly and forwardly slanted bracing surfaces" for a paddler's feet.

**"Planar":**

 A surface that is flat.

**"Contoured":**

 A surface shaped to fit the outline or form of something.

**"Spacing Surface" ('177 Patent):**

 A generally planar surface that is distinct from, and located between, the kayak's seating surfaces, providing at least enough separation between seating surfaces to enable a paddler seated on one seating surface to paddle without interfering with a paddler or passenger occupying another seating surface.

**"Seating Surfaces" ('177 Patent):**

 Aft, middle and forward locations in the cockpit area that are contoured to provide comfortable seating areas and on which passengers are intended to sit, with the footwells associated with the aft seating surface straddling transversely the middle seating surface, and the footwell portions of the footwell associated with the

middle seating surface straddling transversely the forward seating surface.

**"Seating Surfaces" ('063 Patent):**

Locations in the cockpit area on which passengers are intended to sit, and separated longitudinally by a spacing surface, with any seat that is located behind another seat having footwells straddling transversely the forward seating surface.

**"Longitudinally spaced" ('063 Patent):**

 Requiring a spacing surface providing at least enough separation between seating surfaces to enable a paddler seated on one seating surface to paddle without interfering with another paddler or passenger.

**3. Construction of Claims**

**Claim 13 of Patent '177:**

What is claimed in Patent '177, as comprehended by its review, is essentially a three-seat kayak with the back two riders straddling the rider directly to his or her front. The language of the Claim is summarized as follows:

a sit-on-top kayak, comprising a hull defining a hull outer surface and having a bow and a stern; a cockpit area; a seating deck defined within the cockpit area, the seating deck having aft, middle, and forward seating surfaces, and first and second hatch or spacing surfaces; and a footwell associated with each of the seating surfaces, each footwell having a first footwell portion and a second footwell portion; (Patent '177 Col. 6, Para. 1). The hatch or spacing surfaces are "generally planar," and the seating surfaces are "contoured to provide comfortable seating areas;" the first spacing surface is spaced along the seating deck between the aft and middle seating surfaces and the second spacing surface is spaced along the seating deck

between the middle and forward seating surfaces, and the first and second footwell portions of the footwell associated with the aft seating surface straddle the middle seating surface, and the first and second footwell portions of the footwell associated with the middle seating surface straddle the forward seating surface.

In light of the court's constructions, this describes a small decked watercraft propelled by a human or by humans using a double-ended paddle or paddles, narrow in shape, with a generally V-shaped hull portion and a deeper draft than a surfboard to allow better tracking, on top of which the passenger or passengers sit horizontally aligned, with three seating surfaces "slightly concave or contoured to provide a more comfortable seating area" ('177 Patent, col. 4, ll 10–11), separated by two spacing surfaces (initially referred to as "hatch surfaces" but in the claim called spacing surfaces) that are "generally planar" and horizontally aligned ('177 Patent, col. 4, ll 12–13). Each of the three seats must have footwells associated with it, and the aft seat's footwells straddle the middle seat, and the middle seat's footwells straddle the forward, or bow, seat.

**Claim 23 and Dependent Claim 24 of Patent '063:**

The language from these Claims follows:
23. A sit-on-top kayak comprising: a hull defining a hull outer surface, the hull having a first end and a second end longitudinally spaced from the first end; a first seating surface; a second seating surface longitudinally spaced from the first seating space; and a first pair of footwell portions transversely straddling the second seating surface.
24. The kayak of claim 23 including: a third seating surface; and a second pair of footwell portions transversely straddling the third seating surface.

What is claimed in Patent '063, as comprehended by its review, the specifications and the constructions above, is a two-seat, small decked watercraft propelled by a human or by humans using a double-ended paddle or paddles, narrow in shape, with a generally V-shaped hull portion and a deeper draft than a surfboard to allow better tracking, on top of which the passenger or passengers sit horizontally aligned. The seats in this vessel need not be contoured, and must be "longitudinally spaced" from one another. The forward seating surface must be straddled by footwells, while the front seat need not have footwells associated with it. Claim 24 adds a third seat with associated footwells.

**Claims 1 and 2 of Patent '912 B1:**

These claims read as follows:
1. A sit-on-top kayak, comprising: a hull defining a hull outer surface, and defining a bow, a stern, and a cockpit area; first and second seating discrete surfaces formed on the hull outer surface within the cockpit area, where the first seating surface is arranged aft of the second seating surface; and a footwell associated with each of the first and second seating surfaces, each footwell having a first footwell portion and second footwell portion; wherein the first and second footwell portions associated with the first seating surface are arranged on either side of the second seating surface;
2. A sit-on-top kayak, comprising: a hull defining a bow, a stern, and a cockpit area; first and second seating surfaces arranged within the cockpit area, where the first seating surface is arranged aft of the second seating surface; and a footwell associated with each of the first and second seating surfaces, wherein the footwell associated with the first seating surface is arranged relative to the second seating surface such that

at least a portion of the legs of an occupant of the first seating surface straddle the second seating surface.

The court construes claims 1 and 2 in Patent '912 B1, as comprehended by the patent's review, the specifications, and the constructions above as describing a two-seat, small decked watercraft propelled by a human or by humans using a double-ended paddle or paddles, narrow in shape, with a generally V-shaped hull portion and a deeper draft than a surfboard to allow better tracking, on top of which the passenger or passengers sit horizontally aligned. The seats need not be contoured, since the patent reads "the seating surfaces are preferably slightly concave or contoured to provide a more comfortable seating area. However, any surface that is comfortable for an average person would be acceptable as a seating surface. Accordingly, a flat surface or a slightly convex surface, which would not be uncomfortable for the average person to sit on, would be considered a surface that is contoured as a seating surface."

Claim 1 provides for two "discrete" seating surfaces, each one having an associated footwell with right and left portions, and with the aft seat's footwell portions arranged "on either side" of the seat in front.

*"First and second seating discrete surfaces"* is defined as two seats that are distinct from other areas within the cockpit area, with each seat accommodating a paddler or occupant.

*"Arranged on either side"* has the same meaning as "straddling."

Claim 2's language "the footwell associated with the first seating surface is arranged relative to the second seating surface such that at least a portion of the legs of an occupant of the first seating surface straddle the second seating surface" means that an occupant sitting behind another occupant and using the footwells associated with that seat would straddle the forward seat with a portion of his or her legs, because the associated footwells are slightly ahead of the forward seat.

## IV. VALIDITY OF THE PATENTS

After the scope and meaning of the claims and terms are determined, the court's next step is to decide whether the patents are valid. Patents are presumed valid, and the "burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." 35 U.S.C. § 282. Clear and convincing evidence is required to overcome this presumption. *Endress + Hauser, Inc. v. Hawk Measurement Sys. Pty.*, 892 F.Supp. 1107, 1117 (S.D.Ind.1995), *aff'd*, 122 F.3d 1040 (Fed.Cir.1997). Defendant asserts two affirmative defenses—that plaintiff's patents should be deemed invalid due to (1) anticipation, or (2) obviousness.

### 1. Anticipation

To prevail under the anticipation doctrine, a defendant must show by clear and convincing evidence that the prior art reference "exactly discloses each and every limitation of the allegedly anticipated claim.... The absence of even a single claim limitation precludes a finding that the prior art reference anticipates the claim." *Id.*

As reviewed above, after this lawsuit was initiated, defendant discovered a piece of prior art called a "waveski" that has existed since at least the 1980's. A waveski appears to be a watercraft that combines elements of a kayak and a surf board. An Australian waveski manufacturer named Raider sold a tandem waveski called the Raider Double in Australia and the United States prior to the application and issuance of plaintiff's patents. Defendant argues that because the Raider Double has a "hull," a stern seat and a bow

seat, an area for a middle seat, and channels along the sides serving as footwells, each element of claim 23 in Patent '063 was anticipated by it. Since a stern rider's legs would overlap a rider sitting in front of him or her, defendant says Claims 1 and 2 of '912 1B are met as well. Finally, claim 13 of '177 is allegedly met, because the Raider Double has three contoured seats, each with an accessible footwell straddling the seat to the front of it.

This court concludes that the Raider Double and other waveskis did not anticipate the sit-on-top kayaks, because a sit-on-top kayak, as construed above, is small decked watercraft with a generally V-shaped hull portion and a deeper draft than a surfboard to allow better tracking. Waveskis, while sometimes referred to those in the industry—including plaintiff—as one style of sit-on-top kayaks, are distinct from the watercraft described in the patents at issue. Waveskis, including the Raider Double, do not employ a prominently V-shaped bow or hull to increase water displacement, and are more similar to surfboards, which are designed to plane on top of the water. Accordingly, the prior art relied upon by defendant in asserting anticipation and obviousness defenses is non-analogous to the inventions embodied by the patents at issue. *See In re Clay,* 966 F.2d 656, 658–59 (Fed.Cir. 1992) (prior art must be from the same field of endeavor, or at least reasonably pertinent to the particular problem the inventor addressed in the patent or patents at issue). Despite the existence of some overlapping footwells, the prior art relied upon by defendant planes—and is maneuvered—on top of the water, and is not pertinent to the invention of a multiple-rider kayak that achieves stability in the water by means of displacement with a prominently V-shaped hull.

Defendant relies heavily upon extrinsic evidence to suggest that this distinction is merely one of degree, and emphasizes that inventor Niemier created his first sit-on-top kayak from a surfboard and that experts in the field refer to waveskis as a type of sit-on-top kayak. While this evidence establishes that the terminology in the market subsequent to the issuance of plaintiff's patents has blurred the public's and the experts' conceptions of these vessels, this falls short of constituting clear and convincing evidence that defeats the assumption of patent validity.

## 2. Obviousness

██ Defendant also asserts that the patents at issue should be declared as invalid for obviousness. Obviousness, as described under 35 U.S.C. § 103, is a legal conclusion involving four factual inquiries: (1) the scope and content of prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the pertinent art, and (4) secondary considerations, such as evidence of nonobviousness (commercial success of the invention; satisfying a long-felt need; failure of others to solve the same problem; and copying by others). *B.F. Goodrich Co. v. Aircraft Braking Systems,* 72 F.3d 1577, 1582 (Fed.Cir.1996); *Continental Can Co. USA v. Monsanto Co.,* 948 F.2d 1264, 1267 (Fed.Cir.1991); *see also Sakraida v. Ag Pro, Inc.,* 425 U.S. 273, 280, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976) ("The ultimate test of patent validity is one of law, but resolution of the obviousness issue necessarily entails several basic factual inquiries"); *In re Hayes Microcomputer Products, Inc. Patent Litigation,* 982 F.2d 1527, 1539 (Fed.Cir.1992).

"Secondary considerations" referred to above, also known as "objective evidence," involve evidence of nonobviousness, such as commercial success of the invention, satisfying a long-felt need, the failure of others to solve the same problem; and

copying of the invention rather than prior art by others. *B.F. Goodrich Co.*, 72 F.3d at 1582. Such evidence has been described as often being "the most probative and cogent evidence of nonobviousness in the record." *Litton Systems, Inc. v. Honeywell, Inc.*, 87 F.3d 1559, 1569 (Fed. Cir.1996), *judgment vacated on other grounds*, 520 U.S. 1111, 117 S.Ct. 1240, 137 L.Ed.2d 323 (1997).

▇▇ In order to prove obviousness, a defendant must prove, again by clear and convincing evidence, that one of ordinary skill in the art would have found in the prior art references some teaching, suggestion or incentive to combine the prior art references in the way that plaintiff did in plaintiff's invention. Prior art, to be invalidating, must sufficiently teach or direct a person of ordinary skill how to obtain the result reached by the patentee.

▇▇ As reviewed above, defendant relies upon prior art that is non-analogous to the invention of sit-on-top kayaks with multiple seats with straddling footwells. There is nothing in the prior art that would have rendered plaintiff's efforts to fashion a conveniently short multiple-rider kayak obvious, and there is no evidence that anyone—before plaintiff—utilized the features of the several pre-existing watercraft that provided multiple seating, with footrests that straddled forward seats, to develop a smaller, lighter and manageable kayak such as plaintiff's. Nothing in the prior art taught one of ordinary skill in the art to apply such features to a sit-on-top kayak.

To the extent that "secondary considerations" need to be taken into account on this question, these considerations underscore the lack of clear and convincing evidence supporting defendant's assertion of obviousness. It is undisputed that plaintiff's inventions were immediate commercial successes, and it is also undisputed that plaintiff's inventor is recognized as the pioneer in the sit-on-top kayak industry. *See* Ex. P to the Lee Aff., pp. 1–2 (interview published in the Summer 1999 "Paddlesports Business," in which defendant's president acknowledges that he met Tim Niemier while Niemier was displaying a "roto-molded sit-on-top kayak" at a boat show, and that the president "can't thank him enough for his pioneering work;" the president also credits Niemier for developing "a whole new concept and new market;" "Tim started something very big. We're happy he did. . . ."); *see also* Ex. A to the Lee Aff., pp. 11–13 (deposition of defendant's president, in which he acknowledges that the relevant quotations above are accurate). These considerations, as well as the lack of clear and convincing evidence that prior art rendered plaintiff's inventions obvious, compel this court to reject defendant's assertion of obviousness regarding the patents at issue as a matter of law.

## V. SUMMARY JUDGMENT ARGUMENTS

Defendant's arguments that it is entitled to summary judgment on the affirmative defenses of anticipation or obviousness are rejected for the reasons provided above. Defendant also argues that even if the relevant claims are valid, defendant is entitled to summary judgment because defendant's products do not infringe the claims.

Plaintiff also moves for summary judgment, contending it is entitled to summary judgment on the question of defendant's alleged infringement of them. This court denies defendant's motion for summary judgment, and grants plaintiff's motion.

### 1. STANDARDS

▇▇ Summary judgment is no less appropriate in a patent case than in any other type of case. *SRI Int'l v. Matsushita Elec. Corp. of America*, 775 F.2d 1107,

1116 (Fed.Cir.1985); *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 835 (Fed.Cir.1984). The legal standard applicable to a summary judgment motion in a patent case mirrors the standard applicable in other cases. *Barmag Barmer*, 731 F.2d at 835. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995), *cert. denied*, 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548. Assuming that there has been sufficient time for discovery, summary judgment should be entered against a "party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548.

Special rules of construction apply to evaluating summary judgment motions: 1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; 2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party; and 3) the court must assume the truth of direct evidence set forth by the nonmoving party if it conflicts with direct evidence produced by the moving party. *T.W. Electrical Service v. Pacific Electrical Contractors*, 809 F.2d 626, 630 (9th Cir.1987). When different ultimate inferences can be reached, summary judgment is not appropriate. *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir.1981).

The issue of material fact required by Rule 56 to entitle a party to proceed to trial need not be resolved conclusively in favor of the party asserting its existence; all that is required is sufficient evidence supporting the claimed factual dispute to require a jury or judge to resolve the parties' differing versions of the truth at trial. *Id.* At this stage of the litigation, the judge does not weigh conflicting evidence or make credibility determinations. These determinations are the province of the fact finder at trial. *Id.,see also Abdul–Jabbar v. General Motors Corp.*, 85 F.3d 407, 410 (9th Cir.1996) (on a motion for summary judgment, the court is not to weigh the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial).

 In a case where the court is presented with patent validity and infringement issues, the Federal Circuit instructs that the court should decide both issues. *Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1582 (Fed.Cir.1983); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1540 (Fed.Cir.1983). General patent law provides that "whoever without authority makes, uses or sells any patented,invention, within the United States during the term of the patent therefore, infringes the patent." 35 U.S.C. §§ 271, 154. Infringement occurs where the alleged infringer's product contains each element of at least one claim of the patent. *See Panduit Corp. v. Dennison Mfg. Co.*, 836 F.2d 1329, 1330 n. 1 (Fed.Cir.1987).

The "issue of infringement raises at least two questions: (1) what is patented, and (2) has what is patented been made, used or sold by another." *Fromson v. Advance Offset Plate, Inc.*, 720 F.2d 1565, 1569 (Fed.Cir.1983); *see also Rawlplug Co., Inc. v. Illinois Tool Works, Inc.*, 11 F.3d 1036, 1041 (Fed.Cir.1993).

■ An accused device may infringe a patent either literally or under the doctrine of equivalents. The test for literal infringement is exacting. Specifically, the party alleging infringement has the burden of proving by a preponderance of the evidence that "every limitation of the patent claim [is] found in the accused device." *Uniroyal*, 837 F.2d at 1054; *Unique Concepts*, 939 F.2d at 1562 ("[a]ll the limitations of a claim must be considered meaningful. . . ."). If the party alleging infringement is unable to establish literal infringement, the court may nevertheless find that the patent has been infringed under the equitable doctrine of equivalents. *See Uniroyal*, 837 F.2d at 1057 (absence of literal infringement is, in practice, a prerequisite to application of doctrine of equivalents).

■ Under the doctrine of equivalents, a purported infringer may be held liable if the accused device "performs substantially the same overall function or work, in substantially the same way, to obtain substantially the same overall result as the claimed invention." *Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 934 (Fed.Cir.1987), *cert. denied*, 485 U.S. 961, 108 S.Ct. 1226, 99 L.Ed.2d 426 (1988).

As already discussed, a court employs a two-step process to resolve infringement issues: first, the court determines the scope of the patent claims by construing the claims at issue, as a matter of law, in a claim construction opinion pursuant to *Markman*. The second step is determining whether plaintiff proves by a preponderance of the evidence that the defen-dant's allegedly infringing activities fall within the scope of plaintiff's patent claims.

## 2. IS THERE INFRINGEMENT?

■ Defendant argues that even if plaintiff's patents are not invalidated under anticipation or obviousness, its kayaks do not infringe on those patents. Defendant contends that its "Tandem" does not infringe on plaintiff's '177 triple seater, because the Tandem has hatch covers between the two seats and not a "third seat" as the '177 does. Defendant argues that a hatch cover is not a "contoured seat," as is described in the '177 patent.

As construed by this court, Claim 13 of '177 describes a small decked watercraft propelled by a human or by humans using a double-ended paddle or paddles, narrow in shape, with a generally V-shaped hull portion and a deeper draft than a surfboard to allow better tracking, on top of which the passenger or passengers sit horizontally aligned, with three seating surfaces "slightly concave or contoured to provide a more comfortable seating area" ('177 Patent, col. 4, ll 10–11), separated by two spacing surfaces that are "generally planar" and horizontally aligned ('177 Patent, col. 4, ll 12–13). Each of the three seats must have footwells associated with it, and the aft seat's footwells straddle the middle seat, and the middle seat's footwells straddle the forward, or bow, seat.

■ Based upon this court's constructions of terms and claims, these limitations may be read on to the Cobra Tandem literally, except for the provision for a third contoured seat. There is no serious, material factual dispute that the middle surface area of defendant's Cobra Tandem is designed and intended for use as a seating surface. Despite the distinction that the middle seating area of the Cobra Tandem is not specifically "contoured to

provide a more comfortable seating area," defendant's kayak infringes under the doctrine of equivalents. As reviewed above, this doctrine:

> prevents the pirating of the patentee's invention in the absence of literal infringement when liability is nevertheless warranted. The doctrine ... prevents the risk of injustice that may result from a limited focus on words alone.

*Miles Laboratories, Inc. v. Shandon, Inc.,* 997 F.2d 870, 876 (Fed.Cir.1993) (citations omitted), *cert. denied,* 510 U.S. 1100, 114 S.Ct. 943, 127 L.Ed.2d 232 (1994). Equivalency examines whether the accused device performs substantially the same function in substantially the same way to obtain the same result. *See Ethicon Endo–Surgery, Inc. v. U.S. Surgical Corp.,* 149 F.3d 1309, 1315–16 (Fed.Cir. 1998). Defendant cannot escape infringement of Claim 13 merely by providing a seating surface that is by some degree less contoured than that which is described in the patent. The provision of a generally flat area of flexible molded plastic for sitting performs substantially the same function as called for in '177, in substantially the same way, to obtain the same result—a comfortable seating area for a third passenger or solo paddler, as defendant has repeatedly advertised to the consuming public. Defendant's attempt to avoid this conclusion by arguing prosecution history estoppel is rejected. It is true that when prosecution history estoppel precludes a desired interpretation of a patent limitation, the doctrine of equivalents may not resurrect the limitation. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 234 F.3d 558, 564 (Fed.Cir.2000), *cert. granted,* 533 U.S. 915, 121 S.Ct. 2519, 150 L.Ed.2d 692 (2001). Defendant, however, fails to establish that the history applicable in this case estops plaintiff from asserting that a generally planar, or less contoured, area can be a seating surface.

What is claimed in Claim 23 of Patent '063, as construed by this court above, is a two-seat, small decked watercraft propelled by a human or by humans using a double-ended paddle or paddles, narrow in shape, with a generally V-shaped hull portion and a deeper draft than a surfboard to allow better tracking, on top of which the passenger or passengers sit horizontally aligned. The seats in this vessel need not be contoured, and must be "longitudinally spaced" from one another. The forward seating surface must be straddled by footwells, while the front seat need not have footwells associated with it. Claim 24 adds a third seat with associated footwells.

Based upon this court's construction of relevant terms, defendant's Cobra Tandem, Cobra Triple and Cobra Fish N' Dive all indisputably infringe Claim 23, as every limitation in the claim as construed may be read upon these products. The court rejects defendant's attempt to distinguish the Cobra Triple on grounds that '063 refers to a "first seating surface," which defendant construes to mean the vessel's rear-most seat. A plain reading of the limitation reveals that the reference indicates a seat for which there is a forward seating surface to its front. The Cobra Tandem infringes Dependent Claim 24. Defendant's Cobra Tandem "Redesign" also is found to infringe plaintiff's patents as a matter of law. The alleged omission of footwells for the middle seating surface fails to cure the infringement created by the overlapping footwells of the aft seat in the redesign. Finally, as indicated above, the court construes Claims 1 and 2 in Patent '912 B1, as describing a two-seat, small decked watercraft propelled by a human or by humans using a double-ended paddle or paddles, narrow in shape, with a generally V-shaped hull portion and a deeper draft than a surfboard to allow better tracking, on top of which the passenger or passengers sit horizontally aligned. The seats need not be contoured.

**1166**

Based upon this court's construction of relevant terms, defendant's Cobra Tandem, Cobra Triple and Cobra Fish N' Dive all indisputably infringe these claims as construed, since every limitation in the claim as construed may be read upon these products.

## VI. OTHER MOTIONS AND FILINGS

Defendant filed "evidentiary objections" to the expert declarations of Niemier and Shackleton, arguing that these experts' declarations for plaintiff should be deemed inadmissible. Defendant criticizes the manners in which these experts "editorialize," and defendant disputes several specific contentions. Defendant's concerns appear to go to the weight of the opinions, and not their admissibility. The objections are overruled, and plaintiff's motion to strike objections (# 79) is denied as moot.

## VII. CONCLUSION

For the reasons provided, and in accordance with the court's construction of the terms, scope and claims at issue, defendant's motion (doc. # 43) for summary judgment on grounds of patent invalidity due to anticipation or obviousness, or on grounds of non-infringement, is denied. Plaintiff's motion (doc. # 54) for summary judgment on grounds of patent validity and infringement is granted. A trial to determine appropriate damages will be conducted beginning November 6, 2001. The Pretrial Order due to be lodged on October 9, 2001, and the trial documents submitted for the pretrial conference scheduled for October 29, 2001, shall reflect that the trial will be held solely to resolve the questions of recoverable damages.

IT IS SO ORDERED.