**Alan ABRASKIN, Plaintiff,**

**v.**

**ENTRECAP CORPORATION, Defendant.**

No. 98 Civ. 3835(CM).

United States District Court, S.D. New York.

June 24, 1999.

Paul M. Millman, White Plains, NY, for plaintiff.

William J. Speranza, St. Onge Steward Johnston & Reens, Stamford, CT, for defendant.

MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT DISMISSING THE COMPLAINT FOR PATENT INFRINGEMENT, DECLARING THE INVALIDITY OF THE PATENT IN SUIT, AND AWARDING ATTORNEY'S FEES [BASED ON JUNE 11, 1999 DECISION FROM THE BENCH]

McMAHON, District Judge.

This patent infringement action involves fingernail jewelry—to be precise, jeweled baubles that dangle from overly-long nails and endanger the clothing of persons who happen to be near the adorned one. In 1997, plaintiff obtained U.S. Patent No. 5,675,989 (the '989 patent) for a device consisting of "improvements to a fingernail adorning display"—in other words,

plaintiff contended that he had come up with a better item for attaching bits of jewelry to one's fingernails than those then on the market (there is no dispute that fingernail attachments were in popular use well before plaintiff obtained his patent). The claimed invention consisted of the following alleged improvements over prior art (the following description constitutes the claimed invention, as the claim actually appears in the patent (Co. 2, lines 44–64), together with some explanatory language inserted by the Court):

1. "A chain of a selected nominal length having opposite distal and proximal ends." In his answers to interrogatories, plaintiff admitted that this "chain" could be as short as a single link, or longer, depending on the preference of the wearer for a longer or shorter "dangle" for the nail adornment.

2. "A fingernail adornment attached to said chain proximal end incident to contributing to a visual display thereof in dangling relation from said fingernail."

3. "A connector attached to said chain distal end and to a selected extent adhesively to said fingernail."

4. "Said connector having a flat base adhesively connected to said fingernail of an extent to maintain attachment of said connector to said fingernail selected to withstand a pull of a prescribed extent and in response to a greater pull to permit the release thereof." In plain English, this means that the connector could be glued onto the wearer's fingernail with some sort of adhesive that was strong enough so the dangling adornment would not fall off for just any old pull, but would release (and fall off the fingernail) if enough pull were exerted.

5. "A dangling condition of said fingernail adornment in a clearance position from said adhesive connection of said connector to said fingernail to

contribute to eye-attracting movement thereof as permitted by said chain connected in spanning relation between said fingernail and said fingernail adornment, whereby said dangling adornment enhances the appearance of said fingernail and detaches without injury thereto (i.e., to the fingernail) if inadvertently snagged."

Plaintiff commenced this action alleging infringement by Entrecap Corporation, which made and sold "the GOLD FING'RS STICK–ON NAIL JEWELRY embodying the patented invention...." (*See* Amended Complaint ¶ 6). Entrecap denies infringement and counterclaims for a declaration that the '989 patent is invalid, in that its claimed invention was described in a printed publication and was on sale in the United States more than one year before the application for the patent was filed in 1996. *See* 35 U.S.C. § 102(b). Following discovery, Entrecap moved for summary judgment. Abraskin opposes on the ground that there exists a single genuine issue of material fact.

This motion reaches the Court in a most unusual posture. Defendant has filed a Statement pursuant to Local Rule 56.1 setting forth 16 material facts as to which it contends there is no genuine issue. In his counter statement, plaintiff admits and accepts the first fifteen of those undisputed issues of material fact. He disputes only the sixteenth and last material fact. I am therefore in the happy position of being able to recite 15 undisputed material facts, and need consider only whether there exists a disputed issue of material fact as to the 16th in order to decide the motion.

The parties agree that the following issues of material fact are undisputed:

1. Patent No. 5,675,989 (hereinafter referred to as "the '989 patent") was issued on October 14, 1997, naming Alan Abraskin as the inventor, and is entitled "Fingernail Adornment."

2. The '989 patent issued from an application for patent, Serial No. 596,-552, applied for on February 5, 1996.

3. The '989 patent describes as its invention an item for enhancing the appearance of a natural or artificial fingernail.

4. The item described as invention in the '989 patent comprises a "connector" (illustrated in Fig. 2 and Fig. 3 of the patent as element 22); a "chain" (illustrated in Fig. 2 as element 16); and a "fingernail adornment" (illustrated in Fig. 2 of the patent as element 28).

5. According to the description of the '989 patent, the connector 22 is adhesively attached to the surface of a natural or artificial fingernail. One end of the chain 16 (referred to as the "distal" end) is attached to the connector, and another end of the chain 16 (referred to as the "proximal" end) has attached to it fingernail adornment 28. The fingernail adornment thus dangles from the fingernail. The adhesive attachment of the connector 22 to the fingernail surface is such that the connector (and attached chain and adornment) will be held on the fingernail in normal use, but if the item inadvertently snags on an object the connector (an attached chain and adornment) will release from the fingernail.

6. The '989 patent contains a single claim setting forth its alleged invention, which appears at Col. 2, lines 44–64 of the patent text.

7. The claimed invention of the '989 patent is as follows, with the claim language broken into sub-paragraphs so as to aid comprehension:

Improvements for a fingernail-adorning display means having an operative attached condition to said fingernail, said improvements comprising

a chain of a selected nominal length having opposite distal and proximal ends,

a fingernail adornment attached to said proximal end incident to contributing to a visual display thereof in dangling relation from said fingernail, and

a connector attached to said chain distal end and to a selected extent adhesively to said fingernail,

said connector having a flat base adhesively connected to said fingernail of an extent to maintain attachment of said connector to said fingernail selected to withstand a pull of a prescribed extent and in response to a greater pull to permit the release thereof,

and a dangling condition of said fingernail adornment in a clearance position from said adhesive connection of said connector to said fingernail to contribute to eye-attracting movement thereof as permitted by said chain connected in spanning relation between said fingernail and said fingernail adornment,

whereby said dangling adornment enhances the appearance of said fingernail and detaches without injury thereto if inadvertently snagged.

8. The claimed invention of the '989 patent includes within its scope an item of the type claimed, in which the "chain" is simply a "one link chain." As stated in the '989 patent at Column 2, lines 10–13:

Although a multiple-link chain is preferred, as noted above, the desired "dangling" display is also achieved, to a less extent, using a "shorter" one-link chain and is therefore a usable alternative.

9. The claimed invention of the '989 patent includes within its scope an item of the type claimed, in which the connector flat base is adhesively connected to the fingernail by means of

fingernail polish, or clear top coat, or nail art sealer.

10. Snails Italian Jewelry, Inc., located in Boca Raton, Florida, distributed in 1993 a publication entitled "1993 Catalog, Fingernail Jewelry & Nail Art."

11. The aforementioned catalog (hereinafter referred to as the "Snails 1993 Catalog") shows on its page 10 fingernail jewelry items referred to as "Birthstone Hearts."

12. The Snails 1993 Catalog depicts the Birthstone Hearts items as comprising a fingernail adornment (a birthstone in a setting), attached to the proximal end of a chain, and a connector (gold-plated bow) attached to the distal end of the chain.

13. The Snails 1993 Catalog expressly states with respect to the Birthstone Hearts item, that "Birthstone Hearts Available In Polish Secure Or Posted."

14. As of the 1993 date of the Snails 1993 Catalog, persons of ordinary skill in the art would have understood "Polish Secure" in the context of the Birthstone Hearts items to mean adhesive attachment of the gold-plated bow connector of the Birthstone Hearts items to the fingernail surface using, among other things, fingernail polish, clear top coat or nail art sealer, or glue.

15. The Birthstone Hearts items were on sale in the United States more than one year prior to the February 5, 1996 filing date of the application of the '989 patent, having been offered for sale by Snails Italian Jewelry, Inc. in the Snails 1993 Catalog.

These admitted findings establish that a company called Snails published a catalogue in 1993—more than one year prior to the filing of the application of the '989 patent—that advertised the availability for sale of an item called "Birthstone Hearts," which consisted of a jeweled adornment that dangled from the wearer's fingernail by being attached, via a single link chain, to a connector (in the shape of a gold-plated bow) that could be secured to the fingernail in one of two ways: by a post going through the nail (in the same way that a post earring goes through an earlobe); or by "polish secure," which the parties agree means by the use of an adhesive polish, top coat or nail art sealer.

The parties' only dispute is over proposed statement of material fact 16, which states:

16. In the "Polish Secure" version of a Birthstone Hearts item offered for sale by Snails Italian Jewelry, Inc. in 1993 through the Snails 1993 Catalogue, the post normally attached to the underside of the gold-plated bow connector was removed, leaving behind a flat surface for polish securing a Birthstone Hearts item to the fingernail by means of the gold-plated bow connector.

Plaintiff contends that there is a disputed issue of material fact over whether removal of the post left behind a flat surface for polish securing. Through the affidavit of his patent attorney (presumably testifying as an expert as to the ultimate issue in the case), plaintiff contends that the Birthstone Heart is not flat, but concave, and is secured to the fingernail only at either end of the bow connector—not all the way across—which renders it far less able to withstand a slight pull while breaking free if the adornment snagged in someone's clothing.

Plaintiff is incorrect. Exhibit 18 offered in support of the motion for summary judgment, and marked as Exhibit 4 to the Deposition of Marlene Sortino, the publisher of the Snails catalogue, is a Birthstone Heart, complete with gold-plated bow connector, with the post removed. It is attached to an artificial fingernail in the "Polish Secure" mode. The connector does not simply adhere to the nail at either end, but is glued firmly to the tip of the artificial nail from one side to the other, with absolutely no gaps. Furthermore,

the connector is glued across the very tip, the end, of the nail—not down the middle of the nail from tip to cuticle, as plaintiff's expert suggests it would have to be worn. Thus, contrary to the suggestion (made without any evidentiary support) in plaintiff's opposition papers, the adornment does indeed "dangle" from the nail, ready to catch on anything passing by and snag it.

Moreover, having seen the evidence first-hand, I can only conclude that proposed statement of material fact 16 is correct, and that the removal of the post from the underside of the gold-plated bow connector does indeed leave behind "a flat surface for polish securing . . . ." The determination of what a word in a patent claim means presents a question of law. That question, as with any question of claim construction, can be determined only by resort to "intrinsic" evidence—i.e., the language of the patent claim, the specification of the patent and the prosecution history of the patent. Expert testimony (as from plaintiff's patent attorney Mr. Amer) about the meaning of a particular word in a patent is not admissible. *See, e.g., Endress + Hauser, Inc. v. Hawk Measurement Sys. Pty. Ltd.*, 122 F.3d 1040, 1042 (Fed.Cir.1997).

The word "flat" is used in the patent claim as part of the description of the connector (". . . said connector having a flat base adhesively connected to said fingernail . . . ."), but the word "flat" does not appear in the patent specification (the text and drawings of the patent). (*See* Ex. A attached to Complaint). Therefore, the term is to be given its ordinary meaning. *See York Products, Inc. v. Central Tractor Farm & Family Ctr.*, 99 F.3d 1568, 1572 (Fed.Cir.1996). As defendant correctly notes, the word "flat" has two common meanings—either "a continuous surface that is horizontal or nearly so, without significant curvature" or "having a smooth or even surface, whether horizontal or not." (*See* Defendant's Reply Brief, pp. 8–9.) The patent's file wrapper is apparently

silent about which of those two definitions plaintiff had in mind (if either), but since fingernails have some curvature to them, and an item of sufficient size could not be made to adhere at all points unless it displayed some modest curvature as well, it would appear to this court that the "smooth or even" definition is the more logical of the two. Of course, plaintiff's connector (which can be seen in Exhibit 19 in support of the motion) is considerably smaller than the gold-plated bow connector, so even though it has a flat (in the horizontal sense) bottom, it can be made to adhere to a naturally-curved fingernail. However, there is nothing in the claimed invention that limits the size of the connector attachment element. A larger connector (like the bow connector) falls just as surely within the scope of the claimed invention as does a tiny connector (like plaintiff's). Therefore, the word "flat" as used in the '989 patent claim necessarily encompasses the "smooth or even surface" definition.

I therefore conclude that there is no competent evidence in the record to support any conclusion that there remains a genuine issue of fact; that removal of the post from the Birthstone Hearts connector does indeed produce a *flat* surface in the sense of "a smooth or even surface, whether horizontal or not", that adheres to a fingernail at all points, not just at the ends. If the surface were not flat (in the dictionary definition sense of "a smooth or even surface, whether horizontal or not") (*see* Webster's Third New International Dictionary (1969 ed.)), then it would not be possible for every square centimeter of it to adhere to a fingernail when attached thereto with an adhesive. But Exhibit 18 in support of the motion leaves no doubt that the underside of the gold-plated bow is quite capable of doing just that. Thus, proposed undisputed material fact No. 16 is accepted by this Court as an undisputed fact.

■ Defendant is entitled to dismissal of the Complaint and a declaration that the '989 patent is invalid because the claimed invention—an adornment that dangles from a fingernail by means of a flat-bottomed connector appended to the nail via adhesive—was both described in a printed publication and was on sale in the United States more than one year prior to the filing of the patent application. The claimed invention, as interpreted by the Court, was fully anticipated by the Birthstone Heart. The defendant's motion for summary judgment is, therefore, granted.

Defendant has also moved for an award of attorney's fees and expenses because there is clear and convincing evidence that this constitutes an exceptional case. *See* 35 U.S.C. § 285. Defendant notes that, as early as last November, it provided plaintiff with evidence that the claimed invention was anticipated by prior art. From that point on, defendant contends, plaintiff was on notice of the infirmity of its patent. Defendant demanded dismissal of the action on two occasions, and took issue with plaintiff's insistence on taking the deposition of Ms. Sortino, the publisher of the Snails catalogue.

■ Defendant's position is not quite as strong as it thinks, but certainly after the taking of Ms. Sortino's deposition, and the production and marking of Exhibit 4 to that deposition (Exhibit 18 in support of the motion, the fingernail with the bow connector clearly attached thereto), there was no basis for plaintiff to maintain this action further. Moreover, there was absolutely no reason to burden this court with a summary judgment motion where the opposition papers were predicated on drawings made by an attorney that are completely at variance with the actual evidence (i.e., Exhibit 4/18) and had nothing whatever to do with the reality which plaintiff had been made aware of early in January of this year, at Ms. Sortino's deposition. As early as last November 18, plaintiff's counsel had acknowledged that, "If the information checks out" at Ms. Sortino's deposition, "I understand the possible merit of your position." (*See* Letter of Paul M. Milman to William J. Speranza dated November 18, 1998, attached as Ex. 11 to the Affidavit of William J. Speranza in support of the motion.) Well, the information checked out. Exhibit ⁴⁄₁₈ clinched the matter. Since the moment that exhibit was marked at the deposition, plaintiff's continued prosecution of this case has burdened both defendants and the Court unnecessarily. The only protection that parties in Entrecap's position have against abusive and frivolous litigation—and the only protection this Court has against such suits—is an award of counsel fees to the unjustly accused infringer. *See Mathis v. Spears*, 857 F.2d 749, 754 (Fed.Cir.1988). Accordingly, defendant is awarded costs of this action and is also awarded attorney's fees incurred in preparing and submitting the motion for summary judgment. Defendant is directed to file an affidavit of costs and fees within thirty days of the date of this order.

This constitutes the decision and order of the Court.